IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 17-cv-01369-CMA-KLM

AMERICAN SELECT INSURANCE COMPANY, an Ohio corporation,

    Plaintiff,

v.

AILEEN JOHNSON,
CHARLES JOHNSON,
PABLO HERNANDEZ,
HERNANDEZ TRUCKING, LLC,
HERNANDEZ TRUCKING, INC.,

    Defendants.

## ORDER DENYING DEFAULT JUDGMENT

This matter is before the Court on Plaintiff American Select Insurance Company's ("American Select") Motion for Default Judgment Against Defendants Pablo Hernandez, Hernandez Trucking, LLC, and Hernandez Trucking, Inc. (the "Hernandez Defendants"). (Doc. # 23.)  For the reasons stated below, Plaintiff American Select's Motion for Default Judgment is denied.

### I.    BACKGROUND

**A.    THE ACCIDENT**

This action arises from an automobile collision on December 19, 2016, on Highway 85 in Douglas County, Colorado.  Defendant Pablo Hernandez was driving his 2004 Peterbilt dump truck when he collided with a passenger car.  Defendant Charles

Johnson was driving that car, and Defendant Aileen Johnson (collectively, the "Johnson Defendants") was a passenger.

On the day of the collision, Defendant Hernandez was hauling dirt for Troy Forming Concrete, Inc. ("Troy").[1] Defendant Hernandez had dropped off a load of dirt just prior to the collision and was on the phone with a Troy employee at the time of or shortly before the collision. Plaintiff American Select insured Troy under a commercial insurance policy (the "American Select Policy").

Defendant Hernandez owned his Peterbilt dump truck. The dump truck was registered with the Federal Motor Carrier Safety Administration under the name Hernandez Trucking, LLC. Artisan and Truckers Casualty Company ("Progressive") had in effect a commercial automobile policy for the Hernandez Defendants (the "Progressive Policy").

**B.     THE UNDERLYING LAWSUIT**

The Johnson Defendants filed suit against the Hernandez Defendants in the Denver County District Court (the "Underlying Lawsuit").[2] The Johnson Defendants alleged that Defendant Hernandez negligently operated his dump truck and that the resulting collision caused them significant physical and emotional injuries.

The Hernandez Defendants tendered the Johnson Defendants' claims to Progressive for defense and indemnity coverage pursuant to the Progressive Policy.

---

[1] Plaintiff American Select characterizes Defendant Hernandez's work for Troy as being "pursuant to a subcontractor agreement," in which Defendant Hernandez Trucking, Inc., was an "independent contractor." (Doc. # 1 at 3.) Because the Court has not seen evidence supporting this characterization, and the characterization of the Hernandez Defendants' and Troy's relationship has bearing on this action, the Court declines to adopt this statement as fact.

[2] This lawsuit was captioned *Aileen Johnson and Charles Johnson v. Pablo Hernandez, et al.*, Case No. 2017CV30597.

Progressive agreed to defend and indemnify the Hernandez Defendants. Progressive in turn tendered the claims to Plaintiff American Select to determine whether the Hernandez Defendants were covered under the American Select Policy at the time of the collision. American Select denied coverage to the Hernandez Defendants, explaining that Defendant Hernandez was not "under dispatch" with Troy, its insured, at the time of the collision.

The Johnson Defendants and the Hernandez Defendants ultimately settled the Underlying Lawsuit. Pursuant to the settlement's terms, Progressive paid to the Johnson Defendants the $1,000,000 liability limit of the Progressive Policy. The Johnson Defendants and the Hernandez Defendants also stipulated to a final judgment in the amount of $5,000,000 against Defendant Hernandez personally and in favor of the Johnson Defendants. Finally, Defendant Hernandez assigned to the Johnson Defendants his rights, title, and interest in his claims against American Select for the collection of judgment entered against him in the Underlying Lawsuit.

**C.     THIS ACTION FOR DECLARATORY JUDGMENT**

Plaintiff American Select filed this action for declaratory judgment against the Johnson Defendants and the Hernandez Defendants on June 5, 2017. (Doc. # 1.) American Select sought declaratory judgment that:

a) Troy, its insured, "did not own, hire, or borrow the Peterbilt involved in the accident;"
b) The Hernandez Defendants did not qualify as "insured[s]" under the American Select Policy; and
c) "There is no coverage under the [American Select] Policy for the December 19, 2016, accident."

(*Id.*)  American Select also requested "an interpretation of the rights, legal status, and legal relations of the parties."  (*Id.*)

On July 24, 2017, the Clerk of the Court properly entered an Entry of Default pursuant to Fed. R. Civ. P. 55(a) against each of the Hernandez Defendants.  (Doc. ## 20–22.)  American Select moved for default judgment against the Hernandez Defendants on that same day.  (Doc. # 23.)  The Hernandez Defendants never answered or otherwise defended against American Select's complaint.

The Johnson Defendants answered American Select's complaint on August 29, 2017.  (Doc. # 33.)  The Johnson Defendants denied that American Select is entitled to the declaratory relief it sought, and they brought counterclaims against American Select for breach of contract and bad faith breach of insurance contract.  (*Id.*)  American Select filed its reply/answer brief on September 18, 2017.  (Doc. # 35.)

D.  **AMERICAN SELECT'S INSURANCE POLICY**

At the time of the collision, Plaintiff American Select insured Troy under a commercial insurance policy, No. CMM 3784429, effective April 1, 2016, through April 1, 2017.  (Doc. # 27-1 at 15.)  The policy's Business Auto Coverage Declarations established that the American Select Policy included "liability" coverage as to "all autos" for "bodily injury and property damage," with a limit of $1,000,000 for each accident.[3]  (Doc. # 27-2 at 9, 14).

---

[3] The relevant row on the Business Auto Coverage Declarations page, *see* (Doc. # 27-2 at 9), states that liability coverage applies to the "Covered Auto Symbol" "1".  Five pages later, in a table describing covered auto designation symbols, "1" is described as "[a]ny 'Auto'."  (Doc. # 27-2 at 14.)  Other numerical "symbols" describe, for example, "[h]ired 'Autos' only" and "[n]on-owned 'Autos' only."  (*Id.*)

The American Select Policy provided that "[t]he following are 'insureds':

a. You for any covered 'auto'.

b. **Anyone else while using with your permission a covered 'auto' you own, hire or borrow except:**

   1) **The owner, any 'employee' or agent of the owner, or anyone else from whom you hire or borrow a covered 'auto.'** This exception does not apply if the covered 'auto' is a 'trailer' connected to a covered 'auto' you own.

   2) Your 'employee' if the covered 'auto' is owned by that 'employee' or a member of his or her household.

   3) Someone using a covered 'auto' while he or she is working in a business of selling, servicing, repairing, parking or storing 'autos' unless that business is yours.

   4) Anyone other than your 'employees', partner (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their 'employees', while moving property to or from a covered 'auto'.

   5) A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered 'auto' owned by him or her or a member of his or her household.

c. Anyone liable for the conduct of an 'insured' described above but only to the extent of that liability."

(Doc. # 27-2 at 15, 33) (emphasis added.)

Finally, the policy defined relevant terms. An "'employee' includes a 'leased worker.' 'Employee' does not include a 'temporary worker'." (Doc. # 27-2 at 23.) A "'leased worker' means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. 'Leased worker' does not include a 'temporary worker'." (Doc. # 27-2 at 24.) A "'temporary worker' means a person who is furnished to you to substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions." (Doc. # 27-1 at 25.)

## II. STANDARD OF ENTRY FOR DEFAULT JUDGMENT

Default judgment may be entered against a party who fails to appear or otherwise defend. Fed. R. Civ. P. 55. In order to obtain a judgment by default, the moving party must follow the two-step process described in Rule 55: "first, he or she must seek an entry of default from the Clerk of the Court under Rule 55(a); second, after default has been entered by the Clerk, the party must seek default judgment according to the strictures of Rule 55(b)." *Richfield Hospitality, Inc. v. Shubh Hotels Detroit, LLC*, No. 10-cv-00526-PAB-MJW, 2011 WL 3799031, at *2 (D. Colo. Aug. 26, 2011).

At step two, the decision to enter default judgment is "committed to the district court's sound discretion." *Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003) (quoting *Dennis Garberg & Assocs. V. Pack-Tech Int'l Corp.*, 115 F.3d 767, 771 (10th Cir. 1997)). A defendant who fails to answer, plead, or otherwise defend an action is deemed to have admitted the factual allegations of the complaint as true. *Brill Gloria v. Sunlawn, Inc.*, No. 08-cv-00211-MSK-MEH, 2009 WL 416467, at *2 (D. Colo. Feb. 18, 2009). However, a default is not treated as a confession of liability, and, by failing to respond, a defendant does not concede the plaintiff's **legal conclusions**. *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010).

## III. DISCUSSION

In *Frow v. De La Vega*, 82 U.S. 552, 554 (1872), the Supreme Court ruled that, in a case with multiple defendants, judgment should not be entered against a defaulting defendant before the case has been decided on the merits as to the remaining

defendants. This Circuit has repeatedly recognized and applied this articulation of the *Frow* rule. *See, e.g.*, *Hunt v. Inter-Globe Energy, Inc.*, 770 F2d 145, 147–48 (10th Cir. 1985); *Wilcox v. Raintree Inns of America, Inc.*, No. 94-1050, 1996 WL 48857, at *2 (10th Cir. Feb. 2, 1996). While the *Frow* rule generally applies only where defendants are jointly and severally liable, this Circuit recognizes that "the *Frow* rule is also applicable in situations where multiple defendants have **closely related defenses**." *Wilcox*, 1996 WL 48857, at *3 (emphasis added). The "key aim" of the *Frow* rule is "the **avoidance of inconsistent judgments**." *Id.* (emphasis added).

In the instant motion, Plaintiff American Select seeks default judgment against the Hernandez Defendants in the form of a declaratory judgment that the Hernandez Defendants were not covered by the American Select Policy at the time of the collision. (Doc. # 23.) Were the Court to enter this requested declaratory judgment, there would be a strong likelihood of inconsistent judgments. The Johnson Defendants argued in their answer that the "American Select Policy provides liability coverage for an insured driving 'any auto'" and that "[Defendant] Hernandez was an insured under the American Select Policy and was therefore entitled to coverage under the policy." (Doc. # 33 at 8.) The Johnson Defendants therefore disputed Plaintiff American Select's request for declaratory judgment. (*Id.*) If the Johnson Defendants' argument is valid,[4] the result would be incongruous, "unseemly and absurd," *Frow*, 82 U.S. at 554,: Plaintiff American Select would have a declaratory judgment against the Hernandez Defendants that the

---

[4] At this stage in the litigation, the Court declines to resolve the merits of the Plaintiff American Select's claim for declaratory judgment against the Johnson Defendants and the merits of the Johnson Defendants' counterclaims against American Select.

7

Hernandez Defendants were not covered by the American Select Policy, and the Johnson Defendants would have a judgment to the opposite effect.

There is no reason to risk such inconsistency at this time. The better course of action is for the Court to decline to enter judgment against the Hernandez Defendants until the claims between Plaintiff American Select and the Johnson Defendants have been resolved.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Motion for Default Judgment Against the Hernandez Defendants is DENIED. (Doc. # 23.)

DATED: November 13, 2017

BY THE COURT:

*Christine M. Arguello*

CHRISTINE M. ARGUELLO
United States District Judge