**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 17-cv-01369-CMA-KLM

AMERICAN SELECT INSURANCE COMPANY, an Ohio corporation,

     Plaintiff,

v.

AILEEN JOHNSON,
CHARLES JOHNSON,
PABLO HERNANDEZ,
HERNANDEZ TRUCKING, LLC,
HERNANDEZ TRUCKING, INC.,

     Defendants.

---

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

This matter is before the Court on Plaintiff American Select Insurance Company's Motion for Summary Judgment. (Doc. # 48.) For the reasons stated below, the Court grants the motion.

## I.     <u>BACKGROUND</u>

This action arises from an automobile collision that occurred on December 19, 2016, on Highway 85 in Douglas County, Colorado. Defendant Pablo Hernandez was driving his 2004 Peterbilt dump truck when he collided with a passenger car. Defendant Charles Johnson was driving that car, and Defendant Aileen Johnson (collectively, the "Johnson Defendants") was a passenger.

On the day of the collision, Mr. Hernandez was hauling dirt for Troy Forming Concrete, Inc. ("Troy"). Mr. Hernandez and his company Defendant Hernandez Trucking, LLC, also known as Defendant Hernandez, Inc. [1] (collectively, the "Hernandez Defendants") had been hauling dirt for Troy on a subcontract basis for almost five years. The Hernandez Defendants had a commercial insurance policy with Artisan and Truckers Casualty Company ("Progressive"), and Troy had a commercial insurance policy with Plaintiff American Select (the "Policy").

Following the collision, the Johnson Defendants filed suit against the Hernandez Defendants in the Denver County District Court (the "Underlying Lawsuit"). The Johnson Defendants alleged that Mr. Hernandez negligently operated his dump truck and that the resulting collision caused them significant physical and emotional injuries. The Hernandez Defendants tendered the Johnson Defendants' claims to Progressive, which agreed to defend and indemnify them. Progressive then tendered the claims to Plaintiff American Select to determine whether the Hernandez Defendants were covered under Troy's Policy at the time of the collision. American Select denied coverage to the Hernandez Defendants.

The Johnson Defendants and the Hernandez Defendants ultimately settled the Underlying Lawsuit. Pursuant to the settlement's terms, Progressive paid to the Johnson Defendants the $1,000,000 liability limit of the Progressive Policy. The Johnson Defendants and the Hernandez Defendants also stipulated to a final judgment in the amount of $5,000,000 against Mr. Hernandez personally and in favor of the

---

[1] Defendant Hernandez, Inc. is the same entity as Defendant Hernandez, LLC.

Johnson Defendants. Finally, Defendant Hernandez assigned to the Johnson Defendants his rights, title, and interest in his claims against American Select for the collection of judgment entered against him in the Underlying Lawsuit.

Plaintiff American Select later commenced this action for declaratory judgment against the Johnson Defendants and the Hernandez Defendants on June 5, 2017. (Doc. # 1.) Plaintiff specifically requests a declaratory judgment regarding the scope of the Policy's coverage, or lack thereof, over the Hernandez Defendants and their 2004 Peterbilt dump truck. (*Id.* at 6.) The Johnson Defendants filed counterclaims against Plaintiff American Select for breach of contract and bad faith breach (Doc. # 34); the Hernandez Defendants have not filed an answer or otherwise appeared in this case.

On February 2, 2018, Plaintiff American Select filed the instant Motion for Summary Judgment, wherein it argues that the Hernandez Defendants were not covered by the Policy at the time of the collision and request that this Court enter judgment in its favor against all Defendants. (Doc. # 48.) The Johnson Defendants object to summary judgment, arguing that the Hernandez Defendants were, indeed, covered under the terms of the Policy. Based on the following analysis, the Court agrees with Plaintiff American Select.

## II.   ANALYSIS

### A.  LEGAL PRINCIPLES

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000). If, after viewing the evidence in the light most favorable to the nonmoving party, the court determines that no reasonable juror could return a verdict for the nonmoving party, summary judgment is warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

Where, as here, federal jurisdiction is predicated upon diversity, the court applies the substantive law of the forum state. *Barrett v. Tallon*, 30 F.3d 1296, 1300 (10th Cir. 1994). Under Colorado law, "[t]he interpretation of an insurance policy, like any written contract, presents a question of law and, therefore, is appropriate for summary judgment." *Tynan's Nissan, Inc. v. Am. Hardware Mut. Ins. Co.*, 917 P.2d 321, 323 (Colo. App. 1995) (*citing Bumpers v. Guarantee Trust Life Insurance Co.*, 826 P.2d 358 (Colo. App. 1991)).

An insurance policy is a contract between the insurer and the insured which determines the claims which the insurer is legally required to pay. Thus, when construing the terms of an insurance policy, Colorado courts apply traditional principles of contract interpretation. *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 819 (Colo. 2004); *Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995). A "court should interpret a contract 'in its entirety with the end in view of seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless." *Copper Mountain, Inc. v. Industrial Systems, Inc.*, 208 P.3d 692, 697 (Colo. 2009). Courts are to give effect to the intent and reasonable expectations of the

parties and to enforce the policy's plain language unless it is ambiguous. *Hoang v. Assurance Co. of Am.*, 149 P.3d 798, 801 (Colo. 2007).

The Court recognizes that, unlike a negotiated contract, an insurance policy is often imposed on a "take-it-or-leave-it" basis. *Thompson v. Maryland Cas. Co.*, 84 P.3d 496, 501–02 (Colo. 2004); *Huizar v. Allstate Ins. Co.*, 952 P.2d 342, 344 (Colo. 1998). Therefore, the Court assumes a "heightened responsibility" in reviewing insurance policy terms to ensure that they comply with "public policy and principles of fairness." *Thompson*, 84 P.3d at 501–02.

## B. APPLICATION

The question before the Court is straightforward: could any reasonable juror find that the Hernandez Defendants were covered under the Policy? If so, the case should proceed to trial; it not, summary judgment should be granted in Plaintiff American Select's favor, ending this litigation. Viewing the evidence submitted to the Court in the light most favorable to the Defendants, the Court finds that the Hernandez Defendants do not fall within the scope of liability coverage under the Policy and no reasonable juror could find otherwise.

The Policy lists the Named Insured as "Troy Forming Concrete, Inc.," then uses "You" and Your" to refer to Troy throughout the remaining provisions. (*Id.* at 10.) The Policy includes "liability" coverage as to any "covered autos" for "bodily injury and property damage," with a limit of $1,000,000 for each accident, (Doc. # 27-2 at 9, 14) and provides that American Select will pay all sums an "insured" legally must pay as damages under the Policy. It lists the following individuals as "insureds":

     a.      You for any covered 'auto'.

     b.      Anyone else while using with your permission a covered 'auto' you own, hire or borrow except:

    1)  The owner, any 'employee' or agent of the owner, or anyone else from whom you hire or borrow a covered 'auto.' This exception does not apply if the covered 'auto' is a 'trailer' connected to a covered 'auto' you own.

    2)  Your 'employee' if the covered 'auto' is owned by that 'employee' or a member of his or her household.

    3)  Someone using a covered 'auto' while he or she is working in a business of selling, servicing, repairing, parking or storing 'autos' unless that business is yours.

    4)  Anyone other than your 'employees', partner (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their 'employees', while moving property to or from a covered 'auto'.

    5)  A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered 'auto' owned by him or her or a member of his or her household.

     c.  Anyone liable for the conduct of an 'insured' described above but only to the extent of that liability."

(Doc. # 27-2 at 15, 33) (emphasis added.)

Plaintiff American Select argues that the Hernandez Defendants do not fall within any of the above-mentioned categories and are not, therefore, insured under the Policy. The Court agrees; indeed, the Johnson Defendants concede this point and highlight no other provisions in the Policy that would impart coverage on the Hernandez Defendants. The Johnson Defendants instead argue for coverage under the doctrine of respondeat

superior, which gives rise to vicarious liability of an employer for his employee's actions. *See Daly v. Aspen Ctr. for Women's Health, Inc.*, 134 P.3d 450, 452 (Colo. App. 2005). They contend that Mr. Hernandez was Troy's employee and, accordingly, Troy, as the employer, is liable for Mr. Hernandez's conduct. Therefore, they argue, "for liability purposes, [Mr. Hernandez] was effectively Troy at the time of the [a]ccident, [i.e. a Named Insured] and the [dump] truck was a covered auto." (Doc. # 52 at 8.) Having thoroughly considered the issue, the Court rejects this argument because no reasonable juror could conclude that Mr. Hernandez was Troy's employee.

The doctrine of respondeat superior requires a special kind of agency relationship—a master-servant relationship in which the employer has the right to control the employee's performance. *Grease Monkey Int'l, Inc. v. Montoya*, 904 P.2d 468, 472–73 (Colo. 1995); *Connes v. Molalla Transp. Sys., Inc.*, 831 P.2d 1316, 1320–21 (Colo. 1992). Factors relevant to the court's control analysis include the employer's right to hire and dismiss, the method of payment (by time or by job), whether the employer supplies the instrumentalities of the work, and whether the parties believe they are in an employer-employee relationship. *Norton v. Gilman*, 949 P.2d 565, 567 (Colo.1997); *see* Restatement (Second) of Agency, § 220(2) (1958). The test is not rigid, and no one factor controls. *Id.*

As applied to this case, Troy's control over the Mr. Hernandez, or any of the Hernandez Defendants, is insufficient to create an employer-employee relationship or to invoke the doctrine of respondeat superior. To begin, Mr. Hernandez's clear and unequivocal deposition testimony demonstrates that he was not Troy's employee:

Q. Do you understand that, as part of this lawsuit, they are claiming that you were an employee of Troy Forming Concrete, not an independent contractor?

A. I am an independent contractor for Troy. I am not a Troy employee.

Q. And you're insistent that you are an independent contractor, correct?

A. You see, yes, because that's the way I work. The way they pay me, they don't deduct taxes or anything. They pay me the amount that I can – I am collecting from them. That's what makes me an independent contractor.

Q. Okay. That was going to be my next question, How do you know that? Is there anything else about your relationship with Troy that makes you certain that you're an independent contractor, versus an employee, other than the way the fact that Troy does not pay your taxes for you?

A. Yes, because I pay for my own insurance, my workers' compensation, and I work for whomever hires me to do work for them.

Q. Is there anything else that makes you sure that you are an independent contractor, versus an employee?

A. Because he's not my boss. I am the boss of my own company. Let's say he goes and he assigns me to truck, and I don't have any available, that's the end of it.

(Doc. # 62-1 at 11–12.)

Substantial other evidence supports this testimony and the Court's conclusion, including, but not limited to:

- Hernandez, LLC and Troy's Subcontract Agreement (Doc. # 48-5 at 11–15);

- Tax forms, including, a 2016 Form 1099-MISC, showing that Hernandez, LLC was paid $790,091.25 by Troy in "Nonemployee compensation" in 2016 with no taxes withheld (Doc. # 56-1 at 5);

- Invoices and testimony demonstrating that Hernandez, LLC invoiced Troy on a weekly basis based on time spent per job contracted, and that Troy did not pay those invoices on any set schedule (Doc. # 56-1 at 6–59);

- Insurance forms and testimony showing that Hernandez, LLC carried its own liability insurance for its workers and trucks (Doc. # 56-1 at 60–62; # 62-1 at 24–25); and

- Deposition testimony indicating as follows:

  o The Hernandez Defendants hired, fired, paid, and managed their own workers on all dirt removal jobs. Troy had no control or involvement in those decisions.

  o The Hernandez Defendants set their own workers' own schedules and chose their own hauling jobs. Troy had no input, except to tell them where the hauling site is located and when the job site opened;

  o Troy did not supply, store, or maintain any instrumentalities of the job for the Hernandez Defendants. Instead, the Hernandez Defendants owned, used, and maintained their own dump trucks and accessories to haul dirt.

      o   Troy did not consider the Hernandez Defendants to be employees; in his deposition, the Troy representative continuously referred to them as Troy's subcontractors.

(Doc. # 62-1 at 20–46.)

The Johnson Defendants nonetheless argue that Mr. Hernandez was Troy's employee because they worked together for many years and were an "integral" part of each other's businesses; Troy paid Mr. Hernandez "based on the number of hours he worked in a day"; Troy "dictated Mr. Hernandez's start and stop times"; Troy communicated with Hernandez, LLC workers to "ask [them] how work is going"; and Mr. Hernandez's workers were each required to "obtain a signature from a Troy superintendent reflecting that he had completed his work for the day." (Doc. # 52 at 9.) Even assuming these facts are true, they are insufficient to demonstrate that Mr. Hernandez was Troy's employee, particularly considering the substantial contrary evidence before the Court. Instead, most of these assertions simply demonstrate that Troy directed his subcontractors, like the Hernandez Defendants, to their job sites, checked on their work, and maintained contact with them. Simply checking in or requiring a site opening/closing time does not indicate sufficient control to support a finding of an employer-employee relationship under Colorado law. *See Perkins v. Regional Transp. Dist.*, 907 P.2d 672, 675 (Colo. App. 1995) (emphasizing that the right to control, not the fact of control, is the key consideration).

The Court therefore finds that, viewing the evidence in the light most favorable to the Johnson Defendants, Mr. Hernandez was not Troy's employee[2], and no reasonable juror could find otherwise. Because the doctrine of respondeat superior cannot give rise to vicarious liability for work performed by a nonemployee, Troy is not liable for Mr. Hernandez's collision. In other words, Mr. Hernandez was not "effectively Troy at the time of the Accident" and his dump truck was not covered under the Policy as one of Troy's covered autos. Moreover, having reviewed the entire Policy, the Court finds that no provisions provide coverage for the Hernandez Defendants or the collision that occurred in this case.[3] Accordingly, summary judgment is warranted in Plaintiff American Select's favor against all Defendants in this case.[4]

### III.  CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff American Select's Motion for Summary Judgment (Doc. # 48) and ENTERS the following declaratory judgment:

---

[2] The Court also notes that even if the Hernandez Defendants were considered Troy's employees, coverage would likely be excluded for the collision that occurred here. Indeed, the Policy plainly excludes from auto coverage any Troy "'employee' if the covered 'auto' is owned by that 'employee.'" (Doc. # 27-2 at 15, 33.) It is undisputed that the truck involved in the subject collision was owned by the Hernandez Defendants.

[3] Although the Court reviewed the entire Policy, the Court notes that the Johnson Defendants did not raise any argument for coverage aside from their argument under the doctrine of respondent superior.

[4] As mentioned, Plaintiff American Select's Complaint sought only a declaratory judgment regarding coverage, as applied to the Hernandez Defendants and the subject collision. This order addresses such coverage. The Johnson Defendants counterclaimed against American Select for breach of contract and bad faith breach. Because both claims are dependent on coverage under the Policy, they cannot proceed. *See MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1193 (10th Cir. 2009) (citing Colorado cases) ("It is settled law in Colorado that a bad faith claim must fail if, as is the case here, coverage was properly denied and the only claimed damages flowed from the denial of coverage.").

Plaintiff American Select Insurance Company's named Insured Troy Forming Concrete, Inc. did not own, hire, or borrow the Peterbilt dump truck involved in the underlying accident, nor was it the employer of Pablo Hernandez. As such, Pablo Hernandez, Hernandez Trucking, LLC, and Hernandez Trucking, Inc. do not qualify as insureds under Troy Forming Concrete, Inc.'s insurance policy with Plaintiff American Select Insurance Company. Thus, Plaintiff American Select Insurance Company has no liability for damages sustained by the Johnson Defendants arising from the December 19, 2016 accident with Pablo Hernandez.

The Court FURTHER ORDERS that the Johnson Defendants' Counterclaims are DISMISSED WITH PREJUDICE.

DATED: June 18, 2018

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge